CuKiA,per
Nott, J.
The simple question is, whether one copartner can discharge his own individual debt by releasing a debt due to the firm ? It is admitted that he can sell the goods, collect and pay away the money, give receipts, and even pay his own debts out of the copartnership funds; so that if he had received the money in this case and returned it immediately to the plaintiffs, it would have been a good discharge of both debts. If so, why might not the same thing be effected by the single operation of executing mutual releases. It is much more consonant with commercial usage, and carries with it less suspicion of fraud than the mock ceremony of paying the money with one hand and receiving it back with the other. But let us test the principle by bringing it down to the common affairs of life. A physician may be in the habit of attending the usual members of a large commercial establishment, and of taking up goods from their store at the same time, may not each member of the firm at the end of the year pay off his account by entering a credit to the physician on their books, and charging himself with the amount ? The same thing may be done with his lawyer, his tailor, his blacksmith, and so on through all the relations in which the diversified accounts of an extensive establishment can run. Neither would the case be varied if the individual who has thus discharged his own debt, should neglect to charge himself with the amount on the books of the firm, even though it were done with the express view of defrauding his copartners; for if the debt be justly due, it is immaterial as it regards the creditor to whom it is paid, what are the motives of the debtor, or in what manner it may affect the interest of those with whom he is connected. Each member of a *140 firm is the accredited agent of the rest. They recommend him to the world as entitled to their confidence, and if he abuse his trust, the loss must fall upon those who have conferred upon him such authority, and not upon those who have trusted him upon their recommendation. It would be destructive of all confidence, and subversive of the first principles of such associations, if the law were otherwise. The case of Henderson and Smith vs. Wild, 2 Campbell 561, is in conformity with this opinion. The defendant was a tailor and had done business on the separate account of Smith, one of the plaintiffs, he was indebted to them for goods which he had taken up at different times, and now produced the receipt of Smith, one of the plaintiffs, in bar of the action. It was alledged that the receipt was obtained after the dissolution of the copartnership, and antedated-for the purpose of giving effect to the settlement. The court held that the receipt was good, notwithstanding it operated to the benefit of one of the plaintiffs only, if it were given bona fide. But, that if given after the dissolution of the copartnership, and after the advertisement in the Gazette, it must be considered fraudulent and void. It is admitted in this case that if the receipt were given after the partnership was dissolved, and after it was known to the plaintiffs, they can de-'’ve no benefit from it; and that may be n question for future investigation. Some reliance has been placed on the circumstance that the individual account of Coe was actually charged to the company some months before the -settlement of the accounts took place, but it does not appear to me to vary the question; for although one partner cannot bind the company to pay his individual debts, and the plaintiffs could not if they had sued, have recovered the amount of that account against Coe, Green, & Randolph, yet as Coe thought proper to pay it himself, it was immaterial whether it stood in the books as a *141 charge against him or against the firm. I am of opinion that a new trial ought to be granted.
Colcock, J. dissented from the result of the opinion, but gave no reasons.

New trial granted.